Sneed, J.,
delivered the opinion of the court;
The hill is filed by the executor of the last will and testament of Jefferson Alexander, deceased, late of the county of Henry, for a construction of the will of said testator. The will was executed on the twenty-second day of February, 1873, and the testator died in a few days thereafter. The questions arise upon the construction of the fourth, fifth, and sixth clauses of the will. In the third clause the testator directs that “the real estate, property, mill, and lands known as the Ray and Ridgeway mill be sold at the most convenient time that may he agreed upon by his executor and the guardian of testator’s children. But that said sale is not to interfere with the arrangement already made in regard to said property for the. year 1873.” The fourth clause following immediately after in the words following: “I will whatever amount said property may bring more than it cost me, be equally divided between my estate and the parties who have lost money on the same, giving to those who have lost in proportion to their respective interests and losses.” The manifest obscurity of this clause is nowhere removed or relieved by any other clause of the will. Who are the parties who have “lost money on the same,” and how the loss occurred, is nowhere disclosed, nor is the slightest aid to be had in any preceding or subsequent clause of the will as to what the intention of the testator is in this provision. In order to relieve this disposition of that degree of uncertainty which, in the law, would render it null and void, its susceptibility of definite and accurate explanation by parol must be apparent. The chancellor held it void for uncertainty, and we are not to assume, as a matter of fact, that it is easy of interpretation by proof. Indeed the two answers of the minor *227 defendants admit its vagueness and uncertainty, and no possible solution of the problem is anywhere hinted in the record. We are therefore to determine whether the obscurity in question is such a latent ambiguity as may be elucidated by parol, or whether it falls within that category which renders the instrument pro tanto void. A patent ambiguity does not mean a mere inaccuracy of expression, or such uncertainty as arises from the use of peculiar words, or of common words in a peculiar sense.
It occurs when the expression of the instrument is so obscure that the court construing it, placing itself in the situation of the parties, cannot ascertain ‘therefrom the party’s intention. Wigrain on Wills, 174; 1 Greenleaf on Ev., 292, 300; 8 Mete. (Mass.), 576. The presumption of law would, in any such case, be against intestacy, and the intention of the testator must be the paramount guide in all cases. The courts must look for that intention in the will itself, and when it is apparent that intention must not be lightly regarded or reluctantly executed, for “men’s deeds and wills,” said Lord Dyer, “by which they settle their estates, are the laws which private men are allowed to make, and they are not to be altered, even by the king, in his courts of law or conscience.” Plowd., 345. But the intention must be so plain on the face of the instrument, or capable of being made so plain that the executor may proceed to execute his trusts without the slightest misgiving, and with the absolute conviction that he is doing exactly what his testator intended he should do — no more and nothing less.
In view of these principles, let us see if the clause in question belongs to the category of latent ambiguities which may be explained by parol. The testator directs the sale of the “real estate, property, mill, and lands known as the Ray and Ridgeway Mills,” at such time as may be most convenient, and may be agreed upon, by the executor and the guardian of his children. So far as the sale of the *228 property is concerned tlie third item of tlie will is definite and clear enough that it Ipe sold. The hulk of the fund arising from such sale would, of course, in any event, constitute a portion of the corpus of the estate wherewith to execute the trusts of the will. But it is that portion of the fund arising from said sale which may he in excess of the cost of the property to the testator, which is the question of controversy here. To whom does he bequeath it? He directs that this excess be equally divided -between his estate and the parties who have lost money on the same^ giving to those who have lost in pro-portion to their respective interests and losses. "What does he mean by “lost money on the same?” What antecedent did testator have in his mind when he used this expression? He is speaking of the “Bay and Ridgeway Mill property,” and a natural construction would indicate that the money was lost in some mysterious way on that property.
But yet a strict grammatical construction would bring us to conclude that the money was lost on his “estate,” that being, according to strict rule, the last and nearest antecedent. We do not know'' and we cannot tell how this loss was sustained, whether it be on the Bay and Bidgeway Mill property, or on the general estate of the testator. But the shadow deepens as we proceed to inquire who were the parties by whom this loss was sustained. Were they the testator’s vendors w'ho had miscarried in a speculation? Were they the lessees of the mill property, who had made a bad bargain? There is no manner of explanation in the face of the will, and it would seem that such an obscurity could not be explained by parol to an absolute certainty. We are therefore constrained, under the well established principles of law, to concur in the ruling of the learned chancellor, and hold this fourth clause of the will absolutely void for uncertainty.
We concur in the main, also, with the chancellor in holding that the provision of the will in which the testator *229 directs that his “prop'erty titles shall he Tested in his daughters, and their children, arid not to their husbands” —was intended to secure the respective shares of his daughters to their sole and separate use, with remainder to their children, free from all liability for the debts and contracts of their husbands.
A question is also made upon the construction of the fifth clause of the testator’s will, which is in these words: “I will that my other real estate, except my wife’s homestead, be sold at any time by the mutual consent of my executor and the guardian, and the means reinvested in real estate when it is best for my heirs to do so — and the homestead to be sold only by the concurrent consent of my wife, executor, and guardian, and reinvested in real estate.” The decree of the chancellor holds that the wife, under this provision, takes for life the homestead on which they resided at the time 'of the testator’s death — without reference to the size or value of the tract of land embraced therein, which it is suggested at the bar comprises nearly or quite all of the realty owned by the testator. The rule of law is that words, if of common use, are to be taken in their natural, plain, obvious and ordinary signification; but if technical words are used, they are to be taken in their technical sense unless a contrary intention clearly appear. Thus it is held that the homestead is the place of the house, or the home palee, but homestead farm does not necessarily include all the parcels of land owned by the grantor, though lying and occupied together. The construction, however, is matter of intention, and must be gathered from the context. 27 H. H., 241; 15 Johns., 471. In this state, the law itself has defined the word, and it has a strict technical meaning. The constitution of 1870 makes it a matter of constitutional right in the head of the household, with survivorship in the widow in the ease of husband and wife. This will was written in 1873, and we are to presume that the testator was acquainted *230 with the law. The testator might have used the words, “home tract,” or “home place,” or “the tract of land on which he resides” — or words of boundary or other words designating more certainly his intention.
But the will speaks from his death — and he does not use the words, my homestead — ‘hut “my wife’s homestead,” which we think indicates his intention to let the law carve out the homestead for his wife, and that he used the words, “my wife’s homestead” in their technical sense, meaning the land, mansion, and its appurtenances which the law secures to her.
We therefore hold that the chancellor erred in his construction of this clause of the will, or so much thereof as undertakes to declare what the testator meant by the. use of the word homestead.
In all other respects than as herein indicated the decree will be affirmed. The costs will be paid by complainant out of the trust fund in his hands.